# OAKLAND CITY UNIVERSITY
## ADMISSIONS EMPLOYMENT AGREEMENT
### Admissions Representative / Main Campus / Full-Time

**THIS AGREEMENT** is entered into as of the **8th of December, 2011** by and between the Oakland City University (the "University"), and **SHAYLON N. PIERCE**, ("Admissions Representative").

## RECITALS

**A.** The University desires the services of the Admissions Representative, and the Admissions Representative is willing to perform designated services for the University, on the terms and conditions herein provided.

**B.** In order to effectuate the foregoing, the parties hereto wish to enter into an Employment Agreement (the "Agreement") on the terms and conditions set forth below.

Accordingly, the parties hereto agree as follows:

**1. Engagement.** On the terms and conditions set forth in this Agreement, the University agrees to retain the Admissions Representative, and the Admissions Representative agrees to be retained by the University for the term set forth in Section 2 hereof and to perform the services set forth in Section 3 hereof.

**2. Term.** The employment of the Admissions Representative by the University pursuant to this Agreement will commence **January 1, 2012** (the "Beginning Date") and end on **May 31, 2012** or unless sooner terminated as hereinafter set forth (the "Expiration Date"). This Agreement shall be subject to the Termination provisions as stated in Section 9 herein. The period between the Beginning Date and the Expiration Date shall be the "Term". **THIS REPLACES THE CONTRACT ISSUED AUGUST 19, 2011 MAKING IT NULL AND VOID EFFECTIVE DECEMBER 31, 2011.**

**3. Education and University Services.**
Admissions Representative agrees to accept and fill said position according to the following terms and conditions:

(a) The responsibilities of the Admissions Representative at Oakland City University involve every aspect of the recruiting and enrollment process. These responsibilities are outlined in the Admissions Representative job description.

(b) In addition, Admissions Representative is expected to sit at least eighty (80) (FTE) students each recruiting year. Failure to reach these goals may result in termination of the Employment Agreement.

(c) The Admissions Representative will perform his/her duties in accord with the existing rules and the purposes of the University and will support these so long as employed by the University. Utilization of the Employee will be based on the University's need and **not to exceed a maximum of 40 hours per week.**

(d) The Admissions Counselor shall attend student open house, student orientation, commencement activities, and other official academic functions of the University.

**4. Compensation.** The University shall pay to the Admissions Representative an annual base salary of **$31,371.00**. The employee will be required to complete a time card for each pay period.

1

independent observer might reasonably question whether the individual's professional actions or decisions are determined by considerations of personal gain, financial or otherwise. In order to avoid any conflicts of interest, potential or actual, the Admissions Representative must disclose to the President, in writing and in advance, any financial interest, or member manager, officer, or board member role in any organization that is or could be associated with the University. The President will ensure the appropriate management of each disclosure on its own merits and will document approval, if so given, and any relevant instructions.

8. **Standard of Conduct.** The University is a learning community dedicated to academic excellence; life-long learning; the promotion of Christian ethical and moral values; the enhancement of each person's intellectual, spiritual and social development; and community service through positive leadership. The University expects Admissions Representative to be mindful of these principles and to conduct him/herself accordingly, and to refrain from any conduct at or away from the University during the term of this Agreement which will undermine or contradict these principles.

9. **Termination of Employment.**

(a) **Decreased Enrollment.** Decreased enrollment or other administrative considerations may cause the University to terminate this Agreement before or after the beginning date in which event neither party shall be further bound.

(b) **For Cause.** The University, in the sole judgment of the President or its Board of Directors, may terminate the Agreement hereunder: (i) upon the failure of the Admissions Representative (other than for the reasons described in Paragraphs 9(d) or 9(e) hereof) to perform or observe in any respect any of the material terms or provisions of this Agreement; (ii) upon misconduct or actions deemed by the Board to be unprofessional on the part of the Admissions Representative that are damaging or detrimental to the University in a material respect; (iii) upon the conviction of, or a guilty plea by, the Admissions Representative as to a crime involving a felony, misdemeanor, fraud or a crime involving moral turpitude (but not including traffic violations or other infractions); (iv) upon verification by the University after investigation that the Admissions Representative has harassed or discriminated against any person on the basis of race, color, creed, religion, sex, age or marital status, in violation of any federal, state and municipal law or regulation; or (v) use of drugs illegally by the Admissions Representative and (vi) consumption of alcohol or being in a state of intoxication on University property or University sponsored event.

(c) **Without Cause.** Either party may terminate this Agreement for any reason without cause upon thirty (30) days prior written notice to the other party.

(d) **Disability.** The University may terminate the Agreement hereunder at any time after the University's Board of Directors reasonably determines that the Admissions Representative has been unable to perform substantially all of the Admissions Representative's duties hereunder by reason of illness, or physical or mental disability or other similar incapacity, for more than forty (40) business days in a one hundred twenty (120) business day period ("total disability"). The term "business days" shall mean any day other than a Saturday, a Sunday or a day on which the University is required or permitted to close. However, nothing contained in this paragraph shall authorize the University to take any action that would violate the American with Disabilities Act.

(e) **Death.** The agreement shall terminate upon the Admissions Representative's death.

3

If to the Admissions Representative:

> Shaylon N. Pierce
> 330 E. Cherry Street
> Oakland City, IN 47660

and

If to the University:

> Oakland City University
> 138 N. Lucretia St.
> Oakland City, IN 47660
> Ray G. Barber, President

Each party may designate by notice in writing in accordance with this Paragraph 13 a new address and/or facsimile number to which any notice, demand, request or communication may thereafter be so given.

**14.** **No Conflicts.** The Admissions Representative represents and warrants to the University that he/she is not subject to any agreement, instrument, order, judgment or decree of any kind, or any other restrictive agreement of any character, which would prevent him from entering into this Agreement or which would be breached by the Admissions Representative upon his execution of or performance of his duties pursuant to this Agreement.

**IN WITNESS WHEREOF,** the undersigned have executed this Agreement, as of the day and year first set forth above.

_____
Admissions Representative        Date


Oakland City University

By: *Ray L. Barber*  December 12, 2011
Ray G. Barber, President        Date